UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-648-CHL

CURTIS A. BLANDFORD,                                                         Plaintiff,

v.

NANCY BERRYHILL,
ACTING COMMISSIONER OF
THE SOCIAL SECURITY ADMINISTRATION,                     Defendant.

## Memorandum Opinion and Order

Plaintiff Curtis Blandford ("Blandford") appeals the Commissioner's decision denying his application for supplemental security income ("SSI") benefits. (DN 9, #347.) On January 6, 2017, Blandford consented to the undersigned's jurisdiction. (DN 8.) For the reasons stated below, the Court **AFFIRMS** the Commissioner's decision.

### I. Statement of Facts

Blandford filed his application for SSI on July 22, 2013. (DN 9, #347.) His application was initially denied in October 2013 and again upon reconsideration. (*Id*.) Blandford, his attorney, and his mother appeared before Administrative Law Judge Dwight Wilkerson ("ALJ") for a hearing in July 2015. (DN 6-2, #59.) The ALJ issued an unfavorable decision in August 2015. (*Id*. at 38.) In his written opinion, the ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since July 22, 2013, the application date (20 CFR 416.971 *et seq*.).
>
> 2. The claimant has the following severe impairments: schizoaffective disorder bipolar type, mood disorder, anxiety, and history of substance abuse (20 CFR 416.920(c)).

1

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926(a).

4. The claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he can understand, remember, and carry out simple instructions and consistently perform routine tasks on a sustained basis with normal supervision. He is able to tolerate occasional, superficial interactions with coworkers and supervisors in a work environment without public contact, fast pace, or more than occasional changes. He is limited to being in the presence of no more than a few familiar others.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on June 29, 1989 and was 24 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 22, 2013, the date the application was filed (20 CFR 416.920(g)).

(DN 6-2, #43–52.) The Appeals Council subsequently denied Blanford's request for review. (*Id*. at 27.)

## II. Standard of Review

The Social Security Act authorizes payment of SSI to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as follows:

> [An i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. 20 C.F.R. § 404.1520(a)(1); *Sullivan v. Finkelstein*, 496 U.S. 617, 620 (1990). Only step three is at issue in this case.

At step three, the ALJ considers the severity of the claimant's impairment. 20 C.F.R. §404.1520(a)(4)(iii). If the claimant has an impairment that meets or equals one of the listed impairments, the claimant is disabled. *Id*. The listed impairments "were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Id*. at 530 (internal quotation marks omitted).

The Court's review is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence." 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Human Servs*., 974 F.2d 680, 683 (6th Cir. 1992). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could

support a decision the other way." *Cotton*, 2 F. 3d at 695. In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). The Court must also determine if the correct legal standards were applied. *Landsaw v. Sec'y of Health & Human Servs.*, 803F.2d 211, 213 (6th Cir. 1986).

### III. Analysis

On review, Blandford only challenges the ALJ's determination that he did not meet the requirements for Listing 12.03 (schizophrenia spectrum and other psychotic disorders). (DN 9, #349.) The heart of Blandford's argument is that the ALJ misapplied the treating physician rule when he did not give controlling weight to the opinion of Dr. Nasiruddin Siddiqui, Blandford's treating psychiatrist. (*Id*.) Blandford argues that the ALJ did not provide "good reasons" for not assigning Dr. Siddiqui's opinion controlling weight. (*Id*. at 352–54.) Blandford also notes that the report of Dr. Crystal Sahner, the state examining physician, is consistent with Dr. Siddiqui's opinions. (*Id*. at 352.)

A claimant has the burden of proving that he meets every element of a listing. *King v. Sec'y of Health & Human Servs.*, 742 F. 2d 968, 974 (6th Cir. 1986). To meet Listing 12.03, a claimant must meet the requirements in both paragraphs A and B, or alternatively, just paragraph C.[1] On the date of the administrative hearing, Listing 12.03 stated:

> <u>12.03 Schizophrenic, Paranoid and Other Psychotic Disorders</u>: Characterized by the onset of psychotic features with deterioration from a previous level of functioning.

---

[1] Following the adjudication of Blandford's administrative claim, the Commissioner substantially revised the regulations; these revisions went into effect in early 2017. The regulations applied in this opinion are the ones that were in effect at the time of Blandford's hearing (July 2015).

The required level of severity for these disorders is met when the requirements in **both A and B are satisfied, or when the requirements in C are satisfied**.

A. Medically documented persistence, either continuous or intermittent, of one or more of the following:
    1. Delusions or hallucinations; or
    2. Catatonic or other grossly disorganized behavior; or
    3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
        a. Blunt affect; or
        b. Flat affect; or
        c. Inappropriate affect; or
    4. Emotional withdrawal and/or isolation; AND
B. Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
    1. Repeated episodes of decompensation, each of extended duration; or
    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Part 404, Subpart P, Appendix 1 (emphasis added). Because neither side address whether Blandford satisfies the criteria in paragraph A, the Court will presume that the parties have stipulated to the fact that he does. The question therefore becomes whether substantial

evidence supports the ALJ's conclusion that Blandford did not meet the requirements of either paragraph B or paragraph C.

The Court turns first to the ALJ's analysis of Dr. Siddiqui's opinion. Blandford points to two of Dr. Siddiqui's reports, one from March 2014 and the other from March 2015, as evidence that he meets Listing 12.03. (DN 9**,** #350–51.) In the March 2014 report, Dr. Siddiqui indicated that Blandford had "intermittent or persistent" delusions and hallucinations, grossly disorganized behavior, loosening of associations, illogical thinking, poverty of content of speech associated with flat affect, and that Blandford was emotionally withdrawn. (DN 6-7, #329.) Dr. Siddiqui also indicated, *inter alia*, that Blandford had "markedly impaired" limitations in the work-related areas of performing activities within a schedule and punctuality, interacting appropriately with the public, receiving and accepting criticism from supervisors, getting along with coworkers, and responding to appropriately to changes in the work environment. (*Id*. at 329–30.) He then noted "extremely impaired" limitations in working with others without being distracted, maintaining socially appropriate behavior and cleanliness, traveling to unfamiliar places and/or using public transportation, and setting realistic goals independently of others. (*Id*.) In his March 2015 report, Dr. Siddiqui rated Blandford as being "poor"[2] in nearly every category, such as using judgment, following work rules, dealing with the public, reliability, and behaving in a stable manner. (*Id*. at 335–36.) He also indicated that Blandford had "poor personal hygiene, anger [and] mood swings, hallucinations and anger." (*Id*. at 387.) Finally, he opined that Blandford was unable to "hold a job for more than a short period of time," and that he had "difficulty trusting people." Blandford argues that the ALJ's decision to assign Dr. Siddiqui, a treating

---

[2] As defined in the questionnaire, "poor" meant "ability to function in this area is seriously limited but not precluded."

psychiatrist, and his reports less than controlling weight is not supported by substantial evidence. (DN 6-2, #48.)

Blandford is correct in asserting that Dr. Siddiqui qualifies as a treating psychiatrist. A physician is considered a treating source if the claimant sees him "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." *Smith v. Comm'r of Soc. Sec.*, 482 F. 3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. §404.1502). Even if the claimant sees the physician infrequently, the physician can still be considered a treating source "if the nature and frequency of the treatment or evaluation is typical for [the] condition." *Id*. Here, as the ALJ notes, the record reflects that Dr. Siddiqui has been treating Blandford in an outpatient setting since 2013 and continuing into March 2015. (DN 6-2, #48; DN 6-7, #335.) The frequency of Blanford's visit to Dr. Siddiqui is more than sufficient to qualify him as a treating source.

But just because a psychiatrist qualifies as a treating source does not mean the ALJ is bound to assign his opinion controlling weight. Rather, "the opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings and is not contradicted by substantial evidence to the contrary." *Edwards v. Comm'r of Soc. Sec.*, 97 Fed. App'x. 567, 570 (6th Cir. 2004) (citing *Crouch v. Sec'y of Health & Human Servs.*, 909 F. 2d 852, 857 (6th Cir. 1990)); *Hardaway v. Sec'y of Health and Human Servs.*, 823 F. 2d 922, 927 (6th Cir. 1987). If the ALJ does not give controlling weight to a treating source's opinion, he is required to:

> [A]pply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§404.1527(c), 416.927(c). Even though the ALJ must articulate "good reasons," he is not required to explicitly recite the regulation factors as long as his reasons reflect them. *Infantado v. Astrue*, 263 Fed. App'x. 469, 474 (6th Cir. 2008).

Here, the Court finds that the ALJ gave "good reasons" for not assigning Dr. Siddiqui's opinion controlling weight. The ALJ did not give controlling weight to Dr. Siddiqui's reports because "the frequency of the follow-up does not appear consistent with the extent of the mental assessments," and "it appears that the claimant's symptoms have been relatively maintained." (DN 6-2, #48.) For example, despite Dr. Siddiqui reporting in March 2015 that Blandford experienced "hallucinations," at the July 2015 administrative hearing, both Blandford and his mother reported that he had not experienced hallucinations for at least a year, possibly longer. (DN 6-2, #68, 70, 73.) As the ALJ noted, Blandford testified that he was capable of performing some household activities, such as yardwork, cleaning the house, and running errands in town, and the ALJ reasonably inferred that those tasks would not be possible with a rating of "poor" in nearly every mental category (as Dr. Siddiqui's March 2015 report indicated). (*Id.* at 69.) Finally, the ALJ's decision is supported by the relative scarcity of Blandford's visits to Dr. Siddiqui. Following his discharge from the hospital up to March 2015, Dr. Siddiqui saw Blandford seven times. (DN 6-7, #314–15, 327–28, 337–40.) From this evidence, the ALJ reasonably concluded that if Blandford's condition was as severe and non-improving as Dr. Siddiqui claimed it was, then Blandford would have received more intensive care, whether from Dr. Siddiqui or at a hospital. (DN 6-2, #48.) The ALJ's explanation for not assigning Dr.

8

Siddiqui's reports controlling weight reflect several of the factors in 20 C.F.R. §§404.1527(c) and 416.927(c), namely the frequency of the treatment and supportability of the opinion.

Therefore, the Court finds that the ALJ articulated "good reasons" for not assigning controlling weight to Dr. Siddiqui's reports. *See, e.g.*, *Dyer v. Soc. Sec. Admin*, 568 Fed. App'x. 422, 427 (6th Cir. 2014) ("daily activities such as those reported by [the claimant] herself can constitute substantial evidence that a claimant is not disabled"); *Aiello-Zak v. Comm'r of Soc. Sec.*, 47 F. Supp. 3d 550, 560–61 (N.D. Ohio 2014) (ALJ articulated good reasons when he noted, *inter alia*, that another doctor reported that the claimant's anxiety was under control with medication and therapy, no recent reports of panic attacks, and no recent hospitalizations).

As noted above, Blandford bases his entire argument that he meets the criteria for Listing 12.03 on Dr. Siddiqui's reports having controlling weight. (DN 9, #349.) He does not assert that the ALJ erred in any other way other than misapplying the treating physician rule. Because the Court has determined that the ALJ properly assigned the treating physician's reports less than controlling weight, and Blandford does not make any other arguments, the Court finds that substantial evidence supports the ALJ's conclusion that Blandford does not meet Listing 12.03. *See Owings v. Colvin*, 133 F. Supp. 3d 985, 997–98 (M.D. Tenn. 2015) ("The district court is not obligated on judicial review to supply factual allegations in support of claims where no facts are alleged."); *McClellan v. Astrue*, 804 F. Supp. 2d 678, 688 (E.D. Tenn. 2011) ("the court is under no obligation to scour the record for errors not identified by the claimant").

### IV. Conclusion

For the reasons stated above, the Court **AFFIRMS** the Commissioner's decision. The Court will enter a judgement in accordance with this opinion.

cc: Counsel of record